**Melissa MALONE, Plaintiff,**

v.

**Frances LONGO, Defendant.**

**No. 78 C 1248.**

United States District Court,
E. D. New York.

Jan. 8, 1979.

---

140

Lotto, Stolowitz, Farr & Bass, Ronkonkoma, N. Y., for plaintiff, by Joel P. Stolowitz, Ronkonkoma, N. Y.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for defendant, by Burton S. Weston, Brooklyn, N. Y.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This action for defamation arises out of an incident involving two nurses which occurred while they were on duty at the Veterans Administration Hospital in Northport, Long Island. Plaintiff initiated the action in the District Court of Suffolk County but found herself in this court upon defendant's petition for removal pursuant to 28 U.S.C. § 1442, commonly known as the federal officer's removal statute. Two causes of action are asserted. First, plaintiff claims defendant maliciously uttered the following

false and defamatory statement about plaintiff to "various personnel of the hospital": "Malone [plaintiff herein] told me to give a medication that she did not have an order for and insisted upon me giving that order." (Complaint ¶ 20.) Second, she claims defendant published information in an official "Report of Contact" concerning plaintiff which contained the following libelous statement: "She [plaintiff] proceeded to tell me that I was not to question her or the doctor's orders." (Compl. ¶ 23.) Damages are claimed in the amount of $6,000 for each of the two claims. The action is before the court on defendant's motion pursuant to Rule 12(c), F.R.Civ.P., for judgment on the pleadings and on plaintiff's cross-motion for an order remanding the case to State court.

The facts are not altogether clear. According to the complaint, plaintiff was on duty at the hospital on the night of October 17, 1977, when she interpreted a medication order which read "MgSO $_4$ lcc" [magnesium sulfate] as calling for morphine, and asked defendant to give the patient an injection stating "[i]t doesn't say how often he gets it. We'll give it once and call the doctor to see how often he wants him to get it." (Compl. ¶ 11.) Plaintiff alleges defendant balked, picked up the ticket, and stated "[t]his isn't morphine." She refused to give the injection, whereupon plaintiff stated she would check the formula with the lab, and the nurse and doctor on duty. After assurances that the ticket indeed did not call for morphine, plaintiff asserts she admitted error and asked defendant to give the proper medication.

In the meantime, defendant was apparently discussing the correctness of her interpretation of the order with another registered nurse which caused plaintiff to admonish her not to discuss their disagreements with others. An argument ensued, leading to intervention by the nurse on duty who ultimately suggested that a "re-port of contact" be made concerning the incident (Compl. ¶ 19). Plaintiff claims that thereafter defendant "reiterated" the defamatory words to "various personnel of the hospital." (Compl. ¶ 20.)[1]

Defendant's version of the facts differs. Basically she contends that the absence of an indication on the medical ticket as to how often the medication was to have been given caused plaintiff to check the prescription with the head nurse and doctor who immediately corrected her erroneous interpretation of the order. Despite these assurances, defendant contends plaintiff directed her to inject morphine. Only after she refused to administer the morphine did plaintiff again check with the lab, the head nurse and the doctor.

Apart from these differences, the stories are consistent. It is undisputed that the following day, the hospital's head nurse directed defendant to make a written report of contact, which contains the allegedly libelous material set forth above. Plaintiff also was requested to report on the incident. Moreover, the nurse on duty on the night of the incident submitted her own report. A Notice of Intent to Admonish followed, which after an additional rebuttal by plaintiff, resulted in a letter of admonishment being placed in plaintiff's official file where it will remain for six months to two years.[2]

Before reaching the motion for judgment on the pleadings, the court must briefly dispose of plaintiff's cross-motion to remand this case to State court, based as it is on a misconception of the court's power under 28 U.S.C. § 1442. Removal pursuant to this provision by a federal officer sued in State court for "any act under color of such office" is an absolute right and is not dependent upon the discretion of the court. See *Willingham v. Morgan*, 395 U.S. 402, 406, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). This represents a Congressional judgment

---

1. It is not clear to whom defendant initially communicated the allegedly defamatory words. The initial publication, however, is not alleged to be the basis for any cause of action.

Nor has plaintiff identified the "various personnel" of the hospital to whom the complaint makes reference.

2. See Defendant's Exhibits A through F.

that actions against federal officers based on acts performed under color of office should be tried exclusively in a federal forum. *Id.* at 407, 89 S.Ct. 1813; *Gurda Farms, Inc. v. Monroe City Legal Assistance Corp.,* 358 F.Supp. 841, 843 (S.D.N.Y. 1973). Thus, our inquiry is limited to whether plaintiff's action arises out of acts performed by defendant under color of office.

■ The answer is simple. The phrase must be broadly construed. *Areskog v. United States,* 396 F.Supp. 834, 838 (D.Conn.1975). It is sufficient therefore that defendant's objectionable contact with plaintiff occurred inside the Veterans Administration Hospital while plaintiff was performing her official duties and that the relationship between the parties derived solely from their official duties. See *Willingham v. Morgan, supra* at 409, 89 S.Ct. 1813. Since defendant acted under color of federal office, her right of removal is absolute. Hence, plaintiff's motion to remand is denied.

Turning to the question of defendant's motion for judgment on the pleadings—which will be treated as a motion for summary judgment since the court has considered matters outside the pleadings, Rules 12(c) and 56, F.R.Civ.P.—we note defendant claims entitlement to judgment as a matter of law on two grounds. First, she asserts that the truth of her statements operates as an absolute bar to suit and, second, argues that the statements are absolutely privileged because made in response to the direction of her superiors and required by duty.

With respect to the written report, it is clear that the communication was absolutely privileged and cannot be the basis for a cause of action in libel.[3] This follows from the rule established in *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), which provides federal officials with absolute immunity from common law suits for defamation for acts taken within the outer perimeter of their official duties. *Id.* at 569–75, 79 S.Ct. 1335.[4] See also *Spalding v. Vilas,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896). The recent decision in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), leaves this holding intact. There the Court drew a narrow exception to a general rule of qualified immunity reaffirming the applicability of absolute immunity in common law tort actions. *Id.* at 2905 n. 22. See *Granger v. Marek,* 583 F.2d 781 (6 Cir. 1978).

■ It is well settled that this absolute privilege is not an emolument of exalted office but is an expression of a policy designed to promote effective government, see *Barr v. Matteo, supra* 360 U.S. at 572–73, 79 S.Ct. 1335, and extends to lower federal officials, see, *e. g., Grossman v. McKay,* 384 F.Supp. 99 (D.Md.1974) (employee of Training Education Branch in the Office of Personnel Management of NIH); *Sanders Lead Co. v. Levine,* 370 F.Supp. 1115 (M.D.Ala.1973) (U. S. Public Health official); *Areskog v. United States, supra* (Navy officials). It is also clear beyond cavil that statements made by federal officials in the course of disciplinary proceedings, evaluations, complaints and related investigations which the official is under a duty to complete, are within the scope of the official's duties. See, *e. g., Preble v. Johnson,* 275 F.2d 275 (10 Cir. 1960); *Pagano v. Martin,* 397 F.2d 620 (4 Cir. 1968); *Chafin v. Pratt,* 358 F.2d 349 (5 Cir. 1966); *West v. Garret,* 392 F.2d 543 (5 Cir. 1968); *Shipp v. Waller,* 391 F.Supp. 283 (D.D.C. 1975).

■ Here it is undisputed that defendant was directed by her superiors to submit a "Report of Contact." Moreover, the Veter-

---

3. Although difficult to determine on the current record, it is possible that the oral statement alleged to be the basis for the cause of action in slander might also be privileged if defendant shows she was under some duty to communicate this matter to those with whom she in fact communicated.

4. This is so despite an allegation that malice has motivated the actor. See *Gregoire v. Biddle,* 177 F.2d 579 (2 Cir. 1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

ans Administration Employee Letter 00–75–4 which details employee responsibilities and conduct, requires that employees furnish testimony and information in disciplinary and employment cases (see Defendant's Exhibit G). Refusal to so testify may in fact result in disciplinary action. Thus, defendant was clearly under a duty to give the testimony in question and was acting within the outer perimeter of her duties in so doing. Defendant is therefore granted judgment dismissing all claims and causes of action predicated upon statements contained in the "Report of Contact."

The oral statement alleged to be the basis for a cause of action in slander poses a more difficult and, as will be shown, insurmountable obstacle to defendant's motion for summary judgment. Although defendant has come forward with some evidence to support her version of the facts, it cannot be said with assurance that there is but one, undisputed version which would entitle defendant to judgment as a matter of law. The difficulty lies in determining what the facts are in the first instance and in concluding on the basis of such a scant record what the "truth" is in the second. For the following reasons, that part of defendant's motion that is directed at the oral statement detailed *in haec verba* in paragraph twenty of the complaint is denied.

Paragraph twenty sets forth that "upon information and belief, further conversation ensued between the defendant and various personnel of the hospital wherein the defendant reiterated the following: "Malone [plaintiff] told me to give a medication that she did not have an order for and insisted upon me giving that order." These words are alleged to be false and defamatory.

While these are the only words alleged to be defamatory, they are nonetheless susceptible of various interpretations that preclude a conclusion that the words reflect the substantial truth. See *Sanctuary v. Thackery*, 189 Misc. 724, 72 N.Y.S.2d 104, 111 (Sup.Ct.Spec.T.N.Y. County 1947); *Klein v. Priall*, 32 A.D.2d 925, 302 N.Y.S.2d

295, 296 (App.Div. 2d Dept.1969); *Yarmove v. Retail Credit Co.*, 18 A.D.2d 790, 236 N.Y.S.2d 836 (App.Div. 1st Dept.1963). Since the defense of truth must be as broad as the charge, *Sather v. Nat'l Dairy Products Corp.*, 233 N.Y.S.2d 43, 46 (Sup.Ct.Spec. T.Suffolk County 1962), the court cannot grant judgment on the pleadings when, taken as a whole, the statements are capable of more than one meaning. "It is only when the court can say that the publication is not reasonably capable of any defamatory meaning, and cannot reasonably be understood in any defamatory sense, that the court can rule, as a matter of law, that the publication is not libelous." *Meyerson v. Hurlbut*, 68 U.S.App.D.C. 360, 362, 98 F.2d 232, 234 (1938), quoting from, *Fahy v. Melrose Free Press*, 298 Mass. 267, 10 N.E.2d 187, 188 (1937).

Here, it is conceded that plaintiff mistakenly told defendant to administer morphine instead of magnesium sulfate. Whether plaintiff "insisted" after being informed of her error is not clear. Nor is it clear when plaintiff was advised of her misinterpretation. Although defendant submits a "Report of Contact" by the nurse on duty as evidence that plaintiff *already* knew that her interpretation of the ticket was incorrect when she asked defendant to administer morphine,[5] as well as the official admonishment which states in part,

> "When the LPN questioned the validity of such an order you responded by advising her that you did not know why the medication was ordered and that you didn't question doctor's orders,"

these reports do not conclusively establish when plaintiff discovered her error or whether she "insisted" after such discovery.

Thus, while it is technically true that plaintiff told defendant to "give a medication that she did not have an order for," it cannot be said on the present record that she insisted on defendant giving an *erroneous* medication after the error was pointed out to her. Read with the second part of the statement, the first half becomes more

---

**5.** Defendant's Exhibit A.

susceptible of a meaning that plaintiff had no order at all than that she merely misinterpreted a medical ticket. On its face, therefore, the statement can be taken as impugning plaintiff's professional competence and thus is actionable. See, e. g., *Four Star Stage Lighting, Inc. v. Merrick*, 56 A.D.2d 767, 392 N.Y.S.2d 297 (App.Div. 1st Dept.1977); Restatement of Torts (Second) § 573, Comment C at 192–93 (1977). Since we conclude that the statement is ambiguous, and all doubts must be resolved in favor of a party opposing a motion for summary judgment, *Securities Exchange Commission v. Research Automation Corp.*, 585 F.2d 31 at 33 (2 Cir. 1978), this part of defendant's motion is denied.

■ We are constrained to reach this conclusion, despite certain misgivings about the complaint, because of the difficulty in finding the "truth" of the statements on the basis of little more than attorneys' affidavits. We note, however, that it is possible that upon completion of discovery, defendant might be able to establish conclusively her version of the facts and thus the truth of the statement. Moreover, defendant might also be able to assert that communication of the statement to "various personnel of the hospital," or to whomever allegedly communicated, falls within a privilege which would permit the court to grant judgment in her favor. While a pleader must name those who have read a libelous publication to state a cause of action in libel, see *Liffman v. Booke*, 59 A.D.2d 687, 398 N.Y.S.2d 674 (App.Div. 1st Dept.1977); *Schwartz v. Andrews*, 50 A.D.2d 1057, 376 N.Y.S.2d 722 (App.Div. 4th Dept.1975), this apparently is not the rule in a slander action, see *Maxine Gerard, Inc. v. William B. May & Co.*, 51 Misc.2d 711, 273 N.Y.S.2d 888 (Sup.Ct.Spec.T.N.Y. County 1966), *modified*, 281 N.Y.S.2d 974 (App.Div. 1st Dept.1967). Thus, the court is unable to grant judgment on this basis without knowledge of the positions of those to whom defendant allegedly repeated the defamatory remarks and an indication that defendant was under a duty to communicate these matters.

Accordingly, plaintiff's motion to remand is denied and defendant's motion for judgment on the pleadings is granted in part and denied in part.

SO ORDERED.